10142-TRW,MMPA,KAC,TBC                                                          ATTY # 06184955

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERYL YACHNIN, individually and on behalf of other similarly situated persons,<br> Plaintiff,<br>vs.<br><br>VILLAGE OF LIBERTYVILLE, VILLAGE OF LIBERTYVILLE POLICE DEPARTMENT, CHIEF OF POLICE PATRICK CAREY, in his individual capacity, OFFICER JAMES FINN, in his individual capacity, STATES' ATTORNEY MICHAEL WALLER,in his individual capacity, only,<br> Defendants. | No. 10CV05419<br><br>Judge Kendall<br><br>Magistrate Judge Finnegan |

**DEFENDANTS', VILLAGE OF LIBERTYVILLE'S, CHIEF OF POLICE PATRICK CAREY'S AND OFFICER JAMES FINN'S, MOTION TO DISMISS**

NOW COME the Defendants, VILLAGE OF LIBERTYVILLE, CHIEF OF POLICE

PATRICK CAREY and OFFICER JAMES FINN, by and through their attorneys, LANGHENRY,

GILLEN, LUNDQUIST & JOHNSON, LLC, and for their Motion to Dismiss, pursuant to Federal

Rule of Civil Procedure 12(b)(6), state as follows:

**Introduction**

Plaintiff, CHERYL YACHNIN, filed her Complaint on August 26, 2010. (See Complaint,

attached as Exhibit A). The Complaint is brought against the Village of Libertyville (hereinafter

"Village"), the Libertyville Police Department,[1] Libertyville Chief of Police Patrick Carey

(hereinafer "Chief Carey"), Libertyville Police Sergeant James Finn (hereinafter "Sgt. Finn") and

Lake County State's Attorney Michael Waller. Plaintiff brings claims on her own behalf and

---

[1] The Police Department is not a separate legal entity from the Village itself and it should be dismissed as a party to this action. *See Gray v. City of Chicago*, 159 F.Supp.2d 1086, 1089 (N.D.Ill. 2001). The defendants refer only to the Village in this motion for the sake of brevity and accuracy.

additionally attempts to bring a purported class action on behalf of similarly situated persons.

Count I of the Complaint is brought under Section 1983 and alleges a claim for violation of plaintiff's constitutional rights on several bases. Plaintiff asserts claims under the Sixth Amendment based on a denial of access to counsel and a denial of the right to confront witnesses and present evidence on her own behalf. She further asserts a claim under the Fifth Amendment for a violation of her right against self incrimination, as well as a claim for a violation of due process rights on account of the *ex parte* hearing on the search warrant. She claims a violation of her right to privacy in her blood, as well as a violation of her right to refuse to provide a breath sample as allegedly guaranteed under Illinois law. Additionally, plaintiff asserts a claim for violation of her Equal Protection rights and claims for false arrest under the Fourth Amendment for both her arrest for driving under the influence ("DUI") and for the criminal contempt charge. Count II asserts a cause of action for false arrest against the Village and Sgt. Finn for false arrest in connection with the plaintiff's contempt charge. Finally, Count III asserts a claim for malicious prosecution under Illinois law against the Village and Sgt. Finn.

## Facts

The facts giving rise to this lawsuit stem from plaintiff's arrest on August 29, 2008. (Exh. A, ¶16). On that evening, plaintiff was pulled over by Sgt. Finn and subsequently arrested for DUI after failing to properly complete roadside sobriety tests. (*Id.* at ¶28). Sgt. Finn warned her of the consequences of failing to complete requested chemical testing under Section 11-500 of the Illinois Motor Vehicle Code, which included summary suspension of her driver's license for six months. (*Id.* at ¶29, 30; *see also* Warning to Motorist, attached as Exhibit A to Complaint). Plaintiff was then asked to submit to a breathalyzer test, but she refused to do so. (Exh. A, ¶31).

Following her refusal, Sgt. Finn obtained a search warrant in the Circuit Court of Lake

County in order to obtain a blood or breath sample from plaintiff as evidence in support of the DUI charge (*Id.* at ¶38, 39; *see also* Exhibit B to Complaint). The search warrant was granted by Judge Charles Johnson after a probable cause hearing on a complaint and affidavit for the search warrant submitted by Sgt. Finn. (Exh. A, ¶38, 39; Exhibit B to Complaint; *see also* Complaint and Affidavit for Search Warrant, attached as Exhibit B).[2] Following the issuance of the search warrant, Sgt. Finn advised plaintiff that the warrant had been obtained and the collection of a blood or breath sample had been authorized by the court. (Exh. A, ¶44). Nonetheless, plaintiff again refused to submit to a breathalyzer or blood test. (*Id.* at ¶45). Based on her refusal to comply with the search warrant, the Lake County State's Attorney filed a petition for rule to show cause as to why plaintiff should not be held in contempt of court. (*See* Petition for Rule to Show Cause, attached as Exhibit C; Exh. A, ¶48). Pursuant to the contempt of court charge, plaintiff was required to appear at a bond hearing on August 30, 2008. (Exh. A, ¶48, 49). She was subsequently released from custody afer posting bond. (*Id.* at ¶49, 51). Judge Patrick Lawler found her not guilty of the offense of DUI, and also dismissed the contempt charges on October 5, 2009. (Exh. A, ¶55, 56).

### Argument

The Village, Chief Carey and Sgt. Finn seek dismissal of the complaint for failure to state a claim upon which relief may be granted. First, as a threshold matter, plaintiff lacks standing to pursue the injunctive relief she seeks since she no longer has a live case or controversy and does not claim to be subject to arrest again. Next, her arrest for DUI and the subsequent charge for criminal contempt in no way violated her constitutional rights. As such, her Section 1983 claims must fail.

Alternatively, even if a violation of plaintiff's constitutional rights is stated, Sgt. Finn is

---

[2]*See Steinbrecher v. Oswego Police Officer Dickey*, 138 F.Supp.2d 1003, 1107 (N.D.Ill. 2001) ("documents attached to a motion to dismiss may be considered part of the pleading where they are 'referred to in the plaintiff's complaint and are central to her claim'").

entitled to the protection of qualified immunity because the law regarding the legal effect of a search warrant authorizing a search of an individual by way of a blood or breath sample is unclear, and further, because there was arguable probable cause to arrest plaintiff for criminal contempt after the State's Attorney sought a petition for that charge. Therefore, Sgt. Finn should be dismissed. The Village is also entitled to dismissal because absent a constitutional violation, it cannot be found liable. However, assuming *arguendo* that a constitutional violation occurred, the Village is nonetheless entitled to dismissal because plaintiff has failed to allege a custom, practice or policy under *Monell* and its progeny.

Finally, plaintiff's state law claim for malicious prosecution fails because she has not alleged a subsequent act by the Village, Chief Carey or Sgt. Finn to secure the prosecution of the criminal contempt charge. There are no allegations that defendants took any action with regard to the contempt charges following plaintiff's continued failure to submit to blood or breath testing. Thus, her claim for malicious prosecution under Illinois law should be properly dismissed.

## I.      As a Preliminary Matter, Plaintiff Lacks Standing To Pursue Injunctive Relief.

Count I is brought on behalf of plaintiff, individually, as well as the purported class she seeks to represent.[3] Plaintiff seeks an injunction against the State's Attorney and the Village and its police officers. However, plaintiff does not have standing to pursue injunctive relief under the facts of this case.

Under the case or controversy doctrine, the personal stake requirement is based on the policy of "limiting judicial power to disputes capable of judicial resolution." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980). Where there is no live controversy, a court may

---

[3]Dispositive motions may be properly decided prior to ruling on class certification issues. Defendants reserve the right to raise all such arguments in response to any subsequent motion for class certification.

not resolve issues, such as the granting of injunctive relief. *See Gates v. Towery*, 430 F.3d 429, 431 (7th Cir. 2005). Here, plaintiff "is not the right party to pursue injunctive relief." *Campbell v. Miller*, 373 F.3d 834, 836 (7th Cir. 2004). She fails to claim that she has a live controversy because she is likely to be arrested again for DUI and otherwise fails to establish her entitlement to prospective relief. *Id.* Because plaintiff has not certified the purported class she attempts to represent and the propriety of the class action has not been ruled upon, she cannot base her claims for injunctive relief on the possibility that other arrested persons will suffer similar alleged harm. *Id.* Rather, at this stage of the proceeding, she represents only her own interests, not the interests of purported third parties. *Id.* Therefore, this Court lacks jurisdiction to grant injunctive relief.

## II.      Plaintiff's Arrest Did Not Involve Any Constitutional Violation.

Section 1983 provides relief for violations of an individual's constitutional rights or rights created by federal statute. 42 U.S.C. § 1983; *Baumgardner v. County of Cook*, 108 F.Supp.2d 1041, 1042-43 (N.D.Ill. 2000). Failure to allege such a violation precludes recovery under Section 1983. *Id.* Because plaintiff cannot establish any violation of her constitutional rights based on the facts in this case, her claims under Section 1983 should be dismissed in their entirety.

A.      Plaintiff Was Not Entitled to Any Sixth Amendment Guarantees.

Plaintiff claims that she was denied access to counsel and her right to confront witnesses and present evidence on her own behalf during the search warrant proceedings in front of Lake County Circuit Judge Charles Johnson. (Exh. A,¶61(a),(c)). However, the rights guaranteed by the Sixth Amendment are not implicated during an *ex parte* hearing for the issuance of a search warrant.

On the contrary, "Sixth Amendment rights apply only when the Government's role shifts from investigation to accusation." *Liss v. Poviliatis*, 86 C 6704, 1987 WL 9299, *2 (N.D.Ill. Apr. 9, 1987) *citing Moran v. Burbine*, – U.S. –, 106 S.Ct. 1135, 1146 (1986); *Maine v. Moulton*, 474

U.S. 159 (1986); *United States ex rel. Hall v. Lane*, 804 F.2d 79, 81 (7th Cir. 1986). The point of accusation has been limited to the initiation of adversary criminal proceedings, and the courts have limited that point to either a formal charge, preliminary hearing, indictment, information or arraignment. *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). The issuance of a search warrant would not be such a circumstance, but rather is a classic component of routine police investigation that does not trigger any constitutional guarantees under the Sixth Amendment. *Id.* at 690.

Because plaintiff was not entitled to any of her Sixth Amendment rights during Sgt. Finn's application for a search warrant, her claims for any violation of those rights must be dismissed.

B.    Plaintiff's Fifth Amendment Right Against Self Incrimination Was Not Implicated.

The Supreme Court has declined to extend the privilege guaranteed by the Fifth Amendment to physical evidence. *See Schmerber v. California*, 384 U.S. 757, 761 (1966). With regard to the privilege against self incrimination, the Supreme Court has held that "the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in th[at] case did not involve compulsion to those ends." *Id.*

In *Schmerber*, the Supreme Court noted that a police officer's order to a doctor to administer a blood test over the driver's objection was in fact "compulsion" under the Fifth Amendment. 384 U.S. at 761. However, the critical question was whether that action compelled the driver "to be a witness against himself." *Id.* The court answered that question by finding that a person is not entitled to the "exclusion of his body as evidence when it may be material." *Id.* at 763. The privilege merely extended to testimony and evidence relating to communicative acts, not a blood test, even though it was an "incriminating product of compulsion." *Id.* at 765.

Similarly, here, plaintiff's claim that "purporting to force her to give blood or evidence on

her own behalf" fails to implicate the Fifth Amendment. *Id.*; Exh. A, ¶61(d). Therefore, this Court must dismiss her claims under Section 1983 on that basis.

C.      Plaintiff Received All of the Due Process To Which She Was Entitled.

Plaintiff further claims that the defendants violated her right to due process "by refusing to allow her to appear before Judge Charles Johnson" at the time that Sgt. Finn applied for the issuance of a search warrant for a blood or breath sample. (Exh. A, ¶61(b)). However, plaintiff did not have a right to appear before Judge Johnson during that non-adversary proceeding.

A search warrant safeguards an individual's interest in the privacy of his person, home and possessions against any unjustified intrusion of the police because it is issued only after a showing of probable cause to believe that the legitimate object of the proposed search is located in that particular place. *Steagald v. U.S.*, 451 U.S. 204, 212 (1981). An individual's right to due process requires only that the warrant be issued after a finding of probable cause by a neutral and detached magistrate. *Id.* There is no requirement whatsoever that the subject of a search warrant be allowed to appear before the judge issuing the warrant. In fact, the Supreme Court has noted that a search warrant can be obtained via telephone when no magistrate is available in person. *Id.* at 222.

Thus, there can be no basis for a deprivation of the plaintiff's right to due process on account of her failure to appear in person before Judge Johnson at the time he issued the warrant. Therefore, this Court must dismiss plaintiff's claim for a violation of her right to due process in association with the refusal to allow her to appear before Judge Johnson at the time the search warrant was issued.

D.      Plaintiff's Right to Privacy Was Not Violated.

By virtue of the search warrant that plaintiff has classified as "an order compelling her to give blood or breath," plaintiff claims that the defendants also violated her right to privacy. However,

defendants did not obtain any sample of her blood or breath in this instance, and as a result there was no intrusion into plaintiff's privacy in any respect. She was not forced to provide a sample, but rather again declined to submit to testing after the search warrant had been issued. (Exh. A, par. 45).

For the sake of argument, if the plaintiff had submitted to the testing, the procurement of the search warrant for a blood or breath sample ensures that the plaintiff's privacy interests were protected. *See U.S. v. Husband*, 226 F.3d 626, 634 (7th Cir. 2000) ("The benefits of obtaining authorization to perform a compelled medical procedure are obvious: presentation to a neutral decisionmaker both ensures that the individual's Fourth Amendment rights are protected and safeguards the health and safety of the suspect"). Therefore, this Court must dismiss plaintiff's claim for a violation of her right to privacy.

E.   Plaintiff Is Not Entitled To Relief Under Section 1983 For Any Alleged Violation of Rights Guaranteed Under Illinois Law.

Section 1983 provides relief for violations of constitutional rights and rights conferred by federal statute. 42 U.S.C. § 1983; *Baumgardner*, 108 F.Supp.2d at 1042-43. There is no cause of action under Section 1983 for a violation of a state statutory right. *Id.* Because plaintiff is not entitled to relief under Section 1983 for a violation of Illinois statutory rights, her claim for a violation of her state statutory right to refuse chemical testing must be dismissed.[4]

F.   Plaintiff Fails To Plead a Violation of the Equal Protection Clause Under a Class-of-One Claim.

Plaintiff attempts to plead a claim for a violation of her rights under the Equal Protection Clause based on the fact that she was held in custody for over thirteen (13) hours "when other

---

[4]Even if such a claim was permitted under Section 1983, plaintiff's claim that Illinois law affords her a right to refuse to submit to a breathalyzer test or blood test by virtue of Section 11-500 of the Illinois Motor Vehicle Code is a mischaracterization of Illinois law. *See People v. Jones*, 214 Ill.2d 187, 201, 824 N.E.2d 239, 247 (2005) (holding that "section 11-501.2(c)(2) does not grant a statutory right to refuse chemical testing to a DUI arrestee").

similarly situated arrestees on other weekends are permitted to post bond and leave without the requirement of appearing in Bond Court." (Exh. A, par. 61(j)). However, she pleads herself out of court on this claim by alleging that arrestees on other weekends are treated differently. Plaintiff fails to meet the necessary showing on a class-of-one claim that she was treated differently than ***similarly situated*** individuals. *Schor v. City of Chicago*, 576 F.3d 775, 779 (7th Cir. 2009).

In *Schor*, the court upheld the dismissal of a class-of-one claim because, although motorists ticketed while using their cellular telephones were treated differently from other drivers, the motorists "were differently situated given that they were violating a valid ordinance." *Id.* Similarly, in this case, plaintiff was differently situated from arrestees on other weekends because they were not subject to a search warrant, and presumably were not charged with criminal contempt for failing to comply with that search warrant as a result. Thus, plaintiff cannot succeed on a claim that her Equal Protection rights were violated because she was required to appear in Bond Court, a result of the contempt charge, while other drivers arrested for DUI were not. Therefore, this Court must dismiss plaintiff's class-of-one claim for a violation of her Equal Protection rights.

### III.  Sergeant Finn Is Entitled to Qualified Immunity.

Qualified immunity is "an immunity form suit rather than a mere defense to liability and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S.194, 201 (2001). A ruling on qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Id.* at 200. The Supreme Court has noted that the "driving force" behind the doctrine of qualified immunity was ensuring that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Pearson v. Callahan*, – U.S. –, 129 S.Ct. 808, 815 (2009) *quoting Anderson v. Creighton*, 483 U.S. 635, 640, n.2 (1987). Thus, qualified immunity may properly be decided on a

motion to dismiss.

Qualified immunity is afforded to government officials, such as police officers, when those officials are performing discretionary functions, so long as the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This Court may grant qualified immunity by either determining that plaintiff has failed to allege a deprivation of a constitutional right at all or that the constitutional right plaintiff claims to have been violated was not "clearly established." *Pearson*, 129 S.Ct. at 816-18. In analyzing whether the whether the constitutional right was clearly established, the Court should evaluate whether the defendant's alleged misconduct was objectively reasonable on the given set of facts. *Kelly v. Myler*, 149 F.3d 641, 648 (7th Cir. 1998).

Here, Sgt. Finn is entitled to qualified immunity because the legal effect of a search warrant authorizing the collection of a blood or breath sample is unclear where the subject of the search warrant continues to refuse to submit to the testing. Further, Sgt. Finn's reliance on the State's Attorney's pursuit of the contempt charge for plaintiff's violation of the search warrant was reasonable given their respective knowledge, and as a result, arguable probable cause was present under the second prong of the inquiry. Therefore, Sgt. Finn should be properly dismissed.

A. The Law Regarding Compelling Testing As Evidence of DUI Remains Unclear.

The Illinois Supreme Court has held that Section 11-501.2 of the Illinois Motor Vehicle Code does not provide Illinois residents with a right to refuse to submit to chemical testing after they have been arrested for the offense of DUI. *See People v. Jones*, 214 Ill.2d 187, 824 N.E.2d 239 (2005). Further, Illinois has recognized that the United States Supreme Court decision in *Schmerber* made "clear that a compulsory blood test does not violate any constitutional rights of an individual merely because he objected to such tests." *Id. quoting People v. Todd,* 59 Ill.2d 534, 544, 322 N.E.2d 447 (1975). In fact, *Schmerber* found that a blood sample taken pursuant to a search warrant would

constitute a reasonable search under the protections of the Fourth Amendment. 384 U.S. at 768-72. The question of what a police officer is permitted to do when a search warrant for a blood or breath sample is obtained, yet the individual constituting the object of the warrant continues to refuse to submit to chemical testing - the factual scenario present in this case - remains to be decided. However, the Illinois Supreme Court has warned that the lack of a right of refusal does not mean that a police officer can employ physical force in order to obtain a sample for purposes of chemical testing. *Jones*, 214 Ill.2d at 201, 824 N.E.2d at 247.

Here, despite a search warrant authorizing the taking of a blood or breath sample from plaintiff's person, plaintiff continued to refuse to provide such a sample. Under the law, Sgt. Finn was not permitted to take the sample by force, and plaintiff has not made any allegation that he attempted to do so. *Id.*; *see also* Exh A. However, what he was supposed to do to comply with the search warrant in the absence of exercising force against plaintiff is unclear under current case law. Because the course of action that Sgt. Finn was supposed to take in these circumstances was not clearly established, and arguably, had not ever occurred prior to plaintiff's arrest, Sgt. Finn is properly entitled to the protections of qualified immunity. Therefore, Sgt. Finn must be dismissed form this action with prejudice.

B.    Sergeant Finn Is Entitled to Qualified Immunity Based On Arguable Probable Cause.

Sgt. Finn is not required to possess extensive legal knowledge in association with his position as a police officer. *See Williams v. Jaglowski*, 269 F.3d 778, 783 (7th Cir. 2001). Rather, Sgt. Finn is entitled to rely upon "a trained and licensed practitioner of the law and duly appointed officer of the court," such as the State's Attorney and magistrate judge, unless "to his knowledge and belief the order constitutes 'an unacceptable error indicating gross incompetence or neglect of duty.'" *Wollin v. Gondert*, 192 F.3d 616, 624 (7th Cir. 1999). In the absence of such circumstances, the officer is entitled to qualified immunity because he could have reasonably believed that the charge

11

recommended by the State's Attorney was proper, and that reasonable belief would constitute "arguable" probable cause to arrest an individual pursuant to that charge. *Id.* at 623-26.

Here, plaintiff was charged with criminal contempt only after the State's Attorney brought a petition for rule to show cause before a judge.[5] (*See* Exh. C). Plaintiff makes no allegations to suggest that the decision to pursue a petition for rule to show cause amounted to "gross incompetence or neglect of duty." Rather, it is apparent by the allegations within the complaint that the mandates of the search warrant were unclear and subject to interpretation. In fact, plaintiff herself claims at one point that she was compelled to provide a blood or breath sample, while simultaneously claiming that the search warrant failed to compel her to do anything. (*See* Exh. A, par. 61(e), compared to par. 46). Because, under the facts of this case, a reasonable officer in Sgt. Finn's position could have believed that plaintiff's failure to submit to a blood or breath test after the issuance of the search warrant amounted to probable cause for a criminal contempt charge, Sgt. Finn is properly entitled to qualified immunity. Therefore, Sgt. Finn should be dismissed.

## IV. Plaintiff Asserts No Claim Against Chief Carey in His Individual Capacity.

Defendants additionally move for the dismissal of Chief Carey from this suit. Plaintiff has named Chief Carey in his individual capacity, yet she fails to make any allegations against him in her substantive claims. She merely alleges that Chief Carey was a final policymaker and that he was responsible for adopting a municipal custom, policy or practice. Such allegations go only to municipal liability and Chief Carey cannot be held individually liable under *Monell*. Thus, Chief Carey should be properly dismissed from this action.

## V. Plaintiff Fails to Plead a *Monell* Claim Against the Village of Libertyville.

---

[5]Defendants contest plaintiff's allegations that Sgt. Finn sought or pursued the contempt charges, as the petition for rule to show cause clearly demonstrates that the State's Attorney pursued the charges. However, for the sake of argument, even if Sgt. Finn had sought the charges, the State's Attorney's approval of those charges should nonetheless entitle Sgt. Finn to qualified immunity.

The Village cannot be held vicariously liable for any constitutional violations by Sgt. Finn as its agent. *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992). Instead, to state a claim against the Village under Section 1983, plaintiff is required to allege: (1) a constitutional injury; and, (2) that the Village somehow authorized or maintained the unconstitutional conduct by its approval. *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994). Here, plaintiff's claims should be properly dismissed because there was no constitutional violation associated with her arrest. However, assuming for the sake of argument that she properly alleged a constitutional violation, her claim against the Village must nonetheless fail because there is no custom, practice or policy on behalf of the Village by which she can succeed on her Section 1983 claims against it.

Claims against a municipality under *Monell* may be brought under three separate theories: (1) an express policy that caused plaintiff's alleged constitutional deprivation; (2) a widespread or permanent practice that constituted a custom or usage; or, (3) a person with final policymaking authority was responsible for causing the constitutional injury. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). In this case, plaintiff cannot succeed under any of those theories.

First, the Village has no express policy by which it violated plaintiff's constitutional right. Rather, plaintiff attempts to bring her municipal claim under the second theory: a municipal practice or custom. However, liability may only be imposed under the second theory of liability where there is a widespread practice or custom that is "so permanent and well-settled as to constitute a custom or usage with the force of law." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). To establish such a practice or custom, plaintiff must show that there was a pattern of incidents that was so widespread that it would constitute a Village policy, and isolated acts will not generally amount to a custom or policy. *Henry v. Farmer City Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986).

Here, plaintiff attempts to allege that the Village implemented the "no-refusal weekend" policy "from time to time" and she further alleges that the policy has been and continues to be

adopted by numerous other municipalities and other counties in the state. (Exh. A, ¶34). However, the Village cannot be held liable for the policies of *other* municipalities or counties. It may only be liable for wrongs that the Village itself causes. *Kies v. City of Aurora*, 156 F.Supp.2d 970, 987 (N.D.Ill. 2001). Further, the Seventh Circuit has deemed conclusory allegations, without any factual support that such a municipal policy exists, insufficient to establish municipal liability. *See Henry*, 808 F.2d at 1237; *Sivard v. Pulaski County*, 17 F.3d 185, 188 (7th Cir. 1994). Thus, the Village cannot be liable under the second theory of *Monell* liability.

Lastly, plaintiff attempts to assert municipal liability under the third theory, based on her factually unsupported conclusion that Chief Carey was a final policy maker. (Exh. A, ¶33). However, this district and the Court of Appeals for the Seventh Circuit have rejected the equation of a Chief of Police as a decision-maker with what is meant by a final municipal policy maker under *Monell. Furstenau v. City of Naperville*, No. 07-C-6143, 2008 WL 5412872, at *6 (N.D.Ill. Dec. 23, 2008); *see also Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992).

In *Furstenau*, the court noted that the chief of police was "an agent who manages the police department in a manner consistent with the City's policies; he does not, on the other hand, make those policies." *Furstenau* at *5. The court found that the plaintiff failed to state a cause of action for municipal liability under *Monell* based on the theory that the chief of police was an agent for the city who went beyond his authority and acted outside the policies set forth by the city council when he orchestrated a sham investigation and false arrest of the plaintiff. *Id.* at *6.

Similarly, here, Chief Carey was merely a decision-maker, not a final policy maker for the Village, and plaintiff's conclusory allegations are insufficient to hold the Village liable under *Monell* and its progeny. Therefore, this Court must dismiss the Village as a party to this action.

## VI.    Plaintiff Cannot Succeed On Her Claim For Malicious Prosecution Under Illinois Law.

Under Illinois law, plaintiff cannot sustain a claim for malicious prosecution on the basis of

14

a lack of probable cause alone. *Lyttle v. Killackey, et. al.*, 528 F.Supp.2d 818, 833 (N.D.Ill. 2007). Rather, the plaintiff must show that Sgt. Finn "committed some improper act after [he] arrested [her] without probable cause, for example, that [he] pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." *Id. quoting McDade v. Stacker*, 106 Fed.Appx. 471, 475 (2004).

However, in this case plaintiff alleges merely that Sgt. Finn "sought approval or, and initiated, contempt charges" against her. (Exh. A, ¶77). In fact, this allegation is without any merit at all because the State's Attorney filed the petition for a rule to show cause as to why plaintiff should not be charged with criminal contempt. (*See* Exh. C). Nonetheless, even if Sgt. Finn was responsible for pursuing the charges, plaintiff makes no additional allegation that Sgt. Finn "used improper influence on the prosecutor or made knowing misstatements to the prosecutor in order to secure prosecution." *Thorner v. City of Harvey*, 1998 WL 355526, *9 (N.D.Ill. 1998) *citing Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996). Because "a showing of wrongful arrest against a police officer is not sufficient to prove malicious prosecution," plaintiff's claim must fail. *Id.* Therefore, this Court should properly dismiss plaintiff's claim for malicious prosecution.

Respectfully submitted,

**VILLAGE OF LIBERTYVILLE, CHIEF OF POLICE PATRICK CAREY and OFFICER JAMES FINN**

By:___/s/ Thomas R. Weiler_____
Thomas R. Weiler

Thomas R. Weiler (Atty No. 06184955)
Meredith M. Pate (Atty No. 6290417)
Kristen A. Cemate (Atty No. 6299262)
Theresa Bresnahan-Coleman (Atty No. 6299167)
Langhenry, Gillen, Lundquist & Johnson, LLC
33 North Dearborn Street - Suite 1650
Chicago, IL 60602
Tel: (312) 704-6700
Attorney for Defendants, Village of Libertyville, Chief of Police Patrick Carey and Officer James Finn

15

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **CHERYL YACHNIN, individually and on behalf of other similarly situated persons.** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **No.** |
| **VILLAGE OF LIBERTYVILLE, LIBERTYVILLE POLICE DEPARTMENT, CHIEF OF POLICE PATRICK CAREY, in his individual capacity, OFFICER JAMES FINN, in his individual capacity, STATES' ATTORNEY MICHAEL WALLER, in his official capacity, only.** | ) ) ) ) ) ) ) ) ) ) | |
| **Defendants** | ) | |

## <u>COMPLAINT</u>

Plaintiff, by her attorney, Keith L. Hunt complains of Defendants as follows:

1.      This is an action arising out of the Defendants' violation of Plaintiff's civil rights as protected under 42 U.S.C. §1983 and the United States Constitution. This class action brought under Rule 23 challenges the constitutionality of the practice, policy or program conducted in communities in Lake County, Illinois and elsewhere commonly referred to as "no-refusal weekends" and seeks declaratory and injunctive relief barring Defendants from conducting or participating in programs that deny an accused's right to refuse a blood or alcohol test on which charges an accused with a crime, or with contempt, based solely on a drivers refusal to give blood or breath samples in "run of the mill" DUI cases (i.e. circumstances in which the driver was not involved in accident, involuntary death or serious bodily injury).



EXHIBIT

A

## PARTIES

2.     The Plaintiff, Cheryl Yachnin, is a resident of Libertyville, Lake County, Illinois.

Plaintiff brings this suit on her own behalf and on behalf of similarly situated persons.

3.     The Defendant, Village of Libertyville, is an Illinois Municipal Corporation

located in Lake County, Illinois. The Village is one of the parties referred to as the "Libertyville

Defendants."

4.     The Defendant James Finn is and was at all relevant times, a Police Officer for

the Village of Libertyville, located in Lake County, Illinois. Officer Finn is sued in his individual

capacity.  Finn is one of the parties referred to as the "Libertyville Defendants."

5.     The Defendant Patrick Carey was at all relevant times the Chief of Police in the

Libertyville Police Department and was a final policy maker. Carey is sued in his individual

capacity. Carey is one of the parties referred to as the "Libertyville Defendants."

6.     The Lake County States' Attorney, Michael Waller, is sued in his official

capacity only and is sued only for the purpose of securing injunctive relief.  No damages are

sought from the States' Attorney or Lake County.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter and the parties pursuant to

28 U.S.C. §1331 in that it involves a federal question arising under the United States

Constitution and pursuant to 42 U.S.C. §1983; the Court has supplemental jurisdiction under

28 U.S.C. §1367.

8.     This Court has jurisdiction over the parties because they all reside in Lake

County, Illinois, and/or all of the actions giving rise to the Plaintiff's cause of action took place

in Lake County, Illinois, within this judicial district.

9.     Venue is proper because all parties reside in this judicial district and all of the

acts giving rise to the Plaintiff's cause of action occurred within this judicial district.

## CLASS ALLEGATIONS

10.     Plaintiff is a representative who will adequately represent the interests of the

class.

11.     Plaintiff's claims are typical of those of other class members.

12.     Plaintiff's claims have questions of fact and of law common to other class

members which predominate over any individual issues.

13.     The Plaintiff class is so numerous such that joinder is impractical.

14.     This class mechanism is a fair and efficient mechanism for adjusting this

controversy.

15.     As such, Plaintiff seeks class certification pursuant to Rule 23(b)(2) of a class

consisting of:

> All parties who have been or may be compelled to submit to blood or
> breathalyzer tests without being given the opportunity to refuse such tests
> pursuant to a policy, custom, program or practice known as a "no-refusal" DUI
> enforcement.

## FACTS

16.     On or about August 29, 2008, Plaintiff, Cheryl Yachnin, was operating her

automobile in the Village of Libertyville.

17.     At all relevant times the Plaintiff was obeying all traffic laws.

18.     At all relevant times the Plaintiff did not swerve while operating her automobile.

19.     At all relevant times the Plaintiff did not weave while operating her automobile.

20.     At all relevant times, the Plaintiff did not cross the center line while operating

her motor vehicle.

3

21.     At all relevant times the Plaintiff did not hit the curb or cross any fog lines while operating her motor vehicle.

22.     On the date in question, at approximately 11:30 p.m., the Defendant, James Finn, observed the Plaintiff driving her automobile on a public right of way in the Village of Libertyville.

23.     At no time did the Defendant observe the Plaintiff commit any moving violation under the Illinois Vehicle Code.

24.     At all relevant times, the Plaintiff's vehicle was in good and proper working order.

25.     At all relevant times, there were no equipment violations on the Plaintiff's vehicle.

26.     At about 11:30 p.m., Officer Finn pulled over the Plaintiff.

27.     At that time Officer Finn did not have probable cause for the traffic stop.

28.     The Plaintiff was placed under arrest after being required to perform roadside sobriety tests which she performed while not wearing any shoes on uneven pavement littered with stones, pebbles and other road debris.

29.     The Defendant, Finn, and other officers present, thereafter provided Plaintiff with a copy of a warning of the consequences of refusing to submit to a breathalyzer test pursuant to the Illinois Vehicle Code. (Exhibit A).

30.     At that time, the Plaintiff was advised by Officer Finn that, pursuant to Illinois law, the Plaintiff could refuse to take a breathalyzer test, but in the event she did so, her license would be summarily suspended.

4

31.    The Plaintiff refused to take a breathalyzer test at the Libertyville Police Department after having been warned by Officer Finn of her right to refuse and the consequences for refusal, under Illinois law.

32.    Thereafter, and only after providing the Plaintiff with the standard Illinois Motorist Warning Form, the Defendant, James Finn, advised Plaintiff that the Village of Libertyville and the Libertyville Police Department had established a policy for that weekend to the effect that no motorist would be permitted to refuse a breathalyzer test.

33.    Prior to the time of Plaintiff's arrest, the Village of Libertyville, acting through its' Police Department and on information and belief its Police Chief, as a final policy maker, adopted a custom, policy or practice commonly referred to as a "no-refusal weekend" which constituted an official custom, policy or practice of the Libertyville Police Department for purposes of requiring all arrestees and detainees suspected of driving under the influence of alcohol to undergo a breathalyzer and/or blood test and further denying them their statutory right to refuse a breath or blood test.

34.    On information and belief, such a "no-refusal weekend" policy was, has been and continues from time to time to be adopted by the Libertyville Police Department and Village of Libertyville, as well as numerous other municipalities throughout the state of Illinois and has been condoned, supervised by and implemented and prosecuted by the Lake County States' Attorney as well as the States' Attorney of other counties in the state.

35.    The "no-refusal" policy, custom, program or practice is unconstitutional.

36.    The Plaintiff was subsequently taken by a Libertyville Police Officer to the Vernon Hills Police Department.

37.    As the Plaintiff arrived at the Vernon Hills Police Station she was kept and detained against her will in the rear of the squad car.

5

38.     During the time that the Plaintiff was detained in the rear of the squad car,
Officer Finn and/or other Libertyville Police Officers appeared before Judge Charles Johnson
on a *ex parte* basis and requested a search warrant.

39.     Judge Charles Johnson signed a search warrant (Exhibit B) based solely on
Finn's information and without hearing from Plaintiff, which allowed Officer James Finn to
search Cheryl Yachnin's person and Ordered Finn to take blood and breathe samples.

40.     At no time was the Plaintiff ever permitted to appear before or speak to the
Judge.

41.     At no time was the Plaintiff ever provided with a right of counsel to appear
before Judge Johnson on her behalf.

42.     At no time was the Plaintiff ever permitted to confront or cross-examine any
witnesses or call any witnesses on her own behalf at this hearing.

43.     Plaintiff was deprived of her right of due process by not being permitted to
participate in the proceedings before Judge Johnson and as a result of the method and
means employed, Defendants denied Plaintiff any meaningful opportunity to challenge
contest or appeal the ruling.

44.     Thereafter, Officer Finn advised the Plaintiff that Judge Johnson had signed the
search warrant and that she was required to take a breathalyzer test or provide a blood
sample.

45.     After having been advised of the search warrant, the Plaintiff declined to take a
breathalyzer test or provide a blood sample, relying instead on the Illinois Warning to
Motorists form which she had previously been given by Officer Finn.

46.     Nothing in the search warrant (Exhibit B) compelled the Plaintiff to do anything.

47.     The search warrant (Exhibit B) compelled Officer Finn to conduct a search.

6

48.     Notwithstanding the fact that the search warrant did not require the Plaintiff herself to do anything, the Libertyville Police Department, Village of Libertyville and Officer Finn subsequently sought and received approval from the Lake County State's Attorney to charge the Plaintiff with direct criminal contempt for violating the Court Order (search warrant). Defendants then held Plaintiff against her will and confined and incarcerated her overnight until she could appear at a bond hearing on August 30, 2008.

49.     The Plaintiff subsequently appeared at a bond hearing on August 30, 2008, and was thereafter released at approximately 1:30 p.m. on that day, having been incarcerated for over 13 hours.

50.     Other DUI arrestees are typically confined for minimal periods of time (only a few hours) and are not held over to a bond court the following day in Waukegan, instead being allowed to post bond after their arrest at the police station or are released on a personal recognizance bond (I-bond). Plaintiff, on the other hand, was transported to Waukegan and was held for more than 13 hours.

51.     Yachnin was released only after appearing in Bond Court and only upon posting a Twenty Thousand Dollar ($20,000) personal recognizance bond and was not allowed to consume alcohol while on bond release.

52.     Thereafter, on or about October 10, 2008, the Plaintiff filed a Motion to Dismiss the criminal contempt proceeding.

53.     On or about October 27, 2008, the Village of Libertyville, acting through the Lake County States Attorneys' office, attempted to amend the charges against Plaintiff by filing a petition for adjudication of indirect contempt.

54.     By modifying the charges against the Plaintiff, Defendants acknowledged the impropriety of their original charge of direct criminal contempt.

7

55.     The Plaintiff was subsequently found not guilty at a bench trial before Judge

Patrick Lawler in which the Judge found that there was not probable cause for the

Defendant's stop of Plaintiff, and that even if there was, that the Defendants and the State

had failed to prove that the Plaintiff was driving under the influence of alcohol.

56.     Thereafter, on or about October 5, 2009, Judge Patrick Lawler, in the Circuit

Court from the 19th Judicial Circuit in Lake County, Illinois, dismissed the indirect criminal

contempt charges against Plaintiff finding that she had never been under any Court order and

therefore it was improper to charge with any form of contempt.

57.     By incarcerating the Plaintiff based on false and fictitious charges, the

Defendants falsely imprisoned the Plaintiff.

58.     At all relevant times, the Lake County States' Attorney prosecuted Plaintiff for

criminal contempt based solely on her refusal to give a blood or breath sample.

59.     On information and belief, the Defendants have used no-refusal policies,

programs and practices with respect to other similarly situated motorists and have compelled

them to provide breath or blood samples under threat of punishment for contempt,

notwithstanding the proclamation by the Illinois legislature and the motorists' right there under

to elect not to provide samples.

## COUNT I
### 42 U.S.C. §1983
### (Class Claim Against All Defendants)

60.     Plaintiff adopts and incorporates by reference paragraphs 1-59 of the Complaint

as this paragraph.

61.     The Defendants violated the constitutional rights of Plaintiff and other similarly

situated persons in one or more of the following ways:

  a. By denying her access to counsel

8

b.  By violating her due process rights by refusing to allow her to appear before Judge Charles Johnson.

c.  By denying her right to confront witnesses before Judge Johnson, to cross examine them and to present evidence on her own behalf.

d.  By violating Plaintiff's Fifth Amendment right against self incrimination by purporting to force her to give blood or evidence on her own behalf.

e.  By violating the Plaintiff's right of privacy by seeking an order compelling her to give blood or breath in violation of established Supreme Court precedent recognizing that an individual has the right of privacy in their blood.

f.  By incarcerating the Plaintiff against her will based on charges that have no basis in fact or law for criminal contempt.

g.  By falsely arresting the Plaintiff without any factual or legal basis to do so for driving under the influence.

h.  By engaging in a custom, policy or practice that violates the Fourth, Fifth and Sixth Amendments of the United States Constitution by conducting "no-refusal weekends."

i.  By violating the rights guaranteed to the Plaintiff under Illinois law and more specifically under the Illinois Motor Vehicle Code—a motorists' right to refuse to provide breath samples.

j.  By holding the Plaintiff for more than thirteen (13) hours when other similarly situated arrestees on other weekends are permitted to post bond and leave without the requirement of appearing in Bond Court, thus violating Plaintiff's equal protection rights.

    k.  By charging Plaintiff with criminal contempt when Defendants knew Plaintiff
had not been ordered by the Court to do anything.

62.  At all times, Finn acted under color of law.

63.  Under the circumstances of a "run of the mill" DUI, the State does not have a compelling interest sufficient to outweigh or overcome an individual's right of privacy.

64.  As a direct and proximate result of the Defendants' unlawful conduct, the Plaintiff has suffered damages and has incurred and suffered attorneys' fees in the defense and dismissal of these charges, and has suffered public embarrassment, anxiety, humiliation and emotional distress and other forms of damage.

65.  The Defendants acted without probable cause and Finn and Carey acted intentionally to violate the Plaintiff's constitutional and civil rights.

66.  At all relevant times, the decision to enforce a "no-refusal weekend" was instituted as a custom, policy or practice of the Village of Libertyville and/or a decision made by a final policy maker of the Libertyville Police Department which had the effect of a custom, policy or practice of the Department and/or its final policy maker, the Chief of Police.

67.  At all relevant time, Officer Finn, a seasoned police officer with more than thirty years experience, turned a blind eye to the violation of the Plaintiff's Constitutional rights by pursuing and allowing charges to be filed for criminal contempt when he knew, or reasonably should have known, that the search warrant did not order the Plaintiff to do anything.

WHEREFORE, for the foregoing reasons, the Plaintiff, Cheryl Yachnin, respectfully requests that this Court enter and order:

    a.  Declaring that "no-refusal weekends" violate the United States and Illinois
Constitutions;

b. Enjoining the Lake County States Attorney, Village of Libertyville, the Libertyville Police Department and its police officers and all those acting in concert or participation with them from conducting "no-refusal weekends", and/or denying arrestees and detaining their right to refuse a breathalyzer or blood test;

c. Enjoining the Lake County State's attorney's office from conducting, participating in, authorizing or condoning "no-refusal weekends.";

d. Enjoining the Defendant and all those working in concert or participation with them from charging arrestees with criminal contempt (direct or indirect) when they have not been ordered by a Judge to do or refrain from doing anything;

e. Enjoining the Defendants and all they're working in concert or participation with from violating the constitutional rights of Plaintiff and other similarly situation persons.

f. Expunging the driving record of any person charged or convicted with DUI on a "no-refusal weekend;"

g. Awarding Plaintiff and other similarly situated persons damages against the Libertyville Police Department, the Village of Libertyville and Officer Finn;

h. Awarding Plaintiff her compensatory damages against the Libertyville Defendants (Village, Department and Finn);

i. Awarding punitive damages against Defendant Finn only;

j. Awarding Plaintiff pre-judgment interest;

k. Awarding Plaintiff her attorneys' fees and costs pursuant to 42 U.S.C. §1988.

l. Awarding such other relief as the Court deems just.

11

## COUNT II

### 42 U.S.C. §1983 FALSE ARREST
### (Individual Claim Against Libertyville Defendants)

68.    The Plaintiff incorporates by reference all of the allegations contained in paragraphs 1-67 as set forth fully herein.

69.    Defendant Finn arrested the Plaintiff.

70.    Finn and the Libertyville Police Department lacked probable cause to arrest the Plaintiff and detain her for a contempt charge.

71.    At all times Finn was acting under color of law.

72.    As a direct and proximate result the Plaintiff was injured and damaged.

WHEREFORE, for the foregoing reasons, the Plaintiff, Cheryl Yachnin, respectfully requests that this Court award Plaintiff compensatory and punitive damages and enter judgment against the Defendant together with costs and interest and such relief as the Court deems appropriate.

## COUNT III
### MALICIOUS PROSECUTION
### (Individual Claim Against Libertyville Defendants)

73.    The Plaintiff incorporates by reference all of the allegations contained in paragraphs 1-72 as set forth fully herein.

74.    The criminal contempt proceedings were terminated in Plaintiff's favor.

75.    There was a lack of probable cause to initiate criminal contempt proceedings because the Plaintiff was never subject to a Court Order.

76.    The Village of Libertyville, Libertyville Police Department and Office Finn acted with malice towards the Plaintiff.

77.    The Libertyville Defendants sought approval of, and initiated, contempt charges against Plaintiff.

78.     The Plaintiff suffered special injury as a direct and proximate result of the

Defendants' malicious prosecution, including being deprived of her liberty, being incarcerated

and being subject to the terms and conditions of her bond. In addition, the Plaintiff also

incurred other items of damage including attorneys' fees, for defending the false and fictitious

charges and was deprived of time with her family and subjected to public ridicule, unwanted

and unwarranted publicity, anxiety, humiliation and emotional distress.

WHEREFORE, for the foregoing reasons, the Plaintiff, Cheryl Yachnin, respectfully

requests that this Court award Plaintiff compensatory and punitive damages and enter

judgment against the Defendant together with costs and interest and such relief as the Court

deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,


By:   /s/ Keith L. Hunt (electronically filed)
Keith L. Hunt, Attorney for Plaintiff

Keith L. Hunt
Hunt & Associates, PC
Three First National Plaza, 2100
Suite 2100
Chicago, Illinois 60602
(312) 558-1300
khunta@huntassoclaw.com
ecarlson@huntassoclaw.com


Law Offices of Merle Royce
Three First National Plaza
Suite 2100
Chicago, IL 60602
312-553-1233
royce4law@earthlink.net

# WARNING TO MOTORIST

Case Number _____

DUI TRAFFIC CITATION NO. (11-501A1)
33900

DUI TRAFFIC CITATION NO. (11-501A2)

DUI TRAFFIC CITATION NO. (OTHER)

Subsequent to an arrest for driving while under the influence of alcohol, other drug or drugs or intoxicating compound or compounds, or any combination thereof (DUI), you are hereby notified that:

As provided in Section 11-500 of the Illinois Vehicle Code, you are a first offender unless within the last five years of this arrest for DUI you have had:

A previous conviction or court assigned supervision for DUI; or
A conviction in any other state for DUI or a similar offense where the cause of action is the same or substantially similar to the Illinois Vehicle Code; or
Pursuant to a DUI arrest, an Illinois driver's license suspension for refusing or failing to complete all requested chemical test(s) or for submitting to a chemical testing disclosing an alcohol concentration of 0.08 or more or any amount of a drug, substance or intoxicating compound resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act, a controlled substance listed in the Illinois controlled substances Act, an intoxicating compound listed in the Use of Intoxicating Compounds Act, or Methamphetamine as listed in the Methamphetamine Control and Community Protection Act, except in cases where you submitted to chemical testing resulting in an alcohol concentration of 0.08 or more, any amount of drug, substance or intoxicating compound resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act, a controlled substance listed in the Illinois Controlled Substances Act, an intoxicating compound listed in the Use of Intoxicating Compounds Act, or Methamphetamine as listed in the Methamphetamine Control and Community Protection Act and were subsequently found not guilty of the associated DUI charge.
Considering the above, you are warned:
If you refuse or fail to complete all chemical tests requested and:
If you are a first offender, your driving privileges will be suspended for a minimum of 6 months; or
If you are not a first offender, your driving privileges will be suspended for a minimum of 3 years.
If you submit to a chemical test(s) disclosing an alcohol Concentration of 0.08 or more or any amount of a drug, substance or intoxicating compound resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act, a controlled substance listed in the Illinois Controlled Substances Act, an intoxicating compound listed in the Use of Intoxicating Compounds Act, or Methamphetamine as listed in the Methamphetamine Control and Community Protection Act and:
If you are a first offender, your driving privileges will be suspended for a minimum of 3 months; or
If you are not a first offender, your driving privileges will be suspended for a minimum of one year.

You are warned that if you are a CDL Holder, your CDL privileges will be disqualified if you refuse, fail to complete all chemical tests requested, or submit to a chemical test disclosing an alcohol concentration of .08 or more or any amount of a drug, substance or intoxicating compound resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act, a controlled substance listed in the Illinois Controlled Substances Act, an intoxicating compound listed in the Use of Intoxicating Compounds Act, or Methamphetamine as listed in the Methamphetamine Control and Community Protection Act:

For 12 months if you are a first offender;
For life if you are not a first offender.

## MOTORIST UNDER AGE 21

You are further warned that as a motorist under age 21 if you submit to chemical test(s) disclosing an alcohol concentration greater than 0.00 and less than 0.08, your driving privileges will be suspended as provided under Sections 6-208.2 and 11-501.8 of the Illinois Vehicle Code.
As provided in Section 6-208.2, you are a first offender unless you have had a previous suspension under Section 11-501.8 for refusing or failing to complete a chemical test(s) or submitting to chemical testing disclosing an alcohol concentration greater than 0.00.
- If you are a first offender, your driving privileges will be suspended for a minimum of 3 months; or
- If you are not a first offender, your driving privileges will be suspended for a minimum of one year.

## SCHOOL BUS DRIVER

You are further warned that as a school bus driver operating a school bus in accordance with Section 6-106.1a of the Illinois Vehicle Code if you submit to chemical testing disclosing an alcohol concentration greater than 0.00, your privilege to possess a school bus driver permit will be canceled for three years as provided under Sections 6-106.1a and 6-106.1b of the Illinois Vehicle Code.

Warning Issued To     CHERYL L. YACHNIN                    Y255-1126-8622-21
                      Name of Motorist                     Driver's License Number

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct.

_____                               20
Signature of Arresting Officer                        Identifying Number

Enforcement Agency   LIBERTYVILLE

Date of Warning                                       23:42      am / pm
                                                      Time of Warning
583008

# CERTIFICATE OF RIGHTS UNDER MIRANDA AND WAIVER

## LIBERTYVILLE POLICE DEPARTMENT

NAME: _CHERYL L. YACHNIN_          DATE: _08250C_

REPORT NO.: _08-10565_

PLACE: _LIBERTYVILLE Police Dept_

## STATEMENT OF RIGHTS

Before you answer any questions or make any statement you must fully understand your rights:

1. You have the right to remain silent.

2. Anything you say can be used against you in a court of law.

3. You have the right to consult with a lawyer before you answer any question or make any statement, and to have him present during questions.

4. If you cannot afford a lawyer, one will be appointed for you before questioning or at any time during questioning, if you desire.

## ACKNOWLEDGEMENT AND WAIVER OF RIGHTS

**The above statement of my rights has been read to me, and I fully understand them. I am willing to answer questions or make a statement.**

_REFUSED_                          _____
Signature                          Officer

_____                      _____
Witness                            Witness

*STATE OF ILLINOIS* )
)  *SS*
*COUNTY OF LAKE* )

### IN THE CIRCUIT COURT OF THE NINETEENTH
### JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

### SEARCH WARRANT

*THE PEOPLE OF THE STATE OF ILLINOIS, to any Peace Officer of the County of Lake, State of Illinois, GREETINGS:*

*On this day appeared, Officer James Finn of the Libertyville Police Department, Complainant in person and made complaint in writing on oath subscribed and sworn to before the undersigned Judge of the Circuit Court of the Nineteenth Judicial Circuit. Upon examination of the Complaint, I find that it states facts sufficient to show probable cause for the issuance of this Search Warrant.*

*I therefore command you search:*
*the body of the person named, to wit,* **Cheryl L. Yachnin**

**SEX:F  RACE:White  HT:5'3"  WT:110  EYES:Blue  HAIR: Blond**
**SS#:Unknown    DL#:Y255-1126-8622 IL**

*located in Lake County, Illinois, with the authority to search for and to seize any and all evidence that may be found therein including, but not limited to blood and breath samples which may constitute evidence of the offense of Driving Under the Influence of Alcohol in violation of 625 ILCS 5/11-501.*

*I further command that a return of anything so seized shall be made without unnecessary delay before me or before any other Judge or Court having cognizance of the case in the Nineteenth Judicial Circuit, Lake County, Illinois.*

_____
*JUDGE*

*August 30 2008*
*(Time and Date of Issuance)*  1:36 Am

Def. Exh. #2

*STATE OF ILLINOIS*

*IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT*

*LAKE COUNTY, ILLINOIS*

### COMPLAINT AND AFFIDAVIT FOR SEARCH WARRANT

Officer James Finn of the Libertyville Police Department, *Complainant, now appears before the undersigned Judge of the Circuit Court and requests the issuance of a Search Warrant to search:*

 *A. the body of the person named, to wit,* **Cheryl L. Yachnin**

**SEX:F RACE:White HT:5'3" WT:110 EYES:Blue HAIR: Blond**
**SS#:Unknown  DL#:Y255-1126-8622**

*located in Lake County, Illinois, with the authority to search for and to seize any and all evidence that may be found therein including, but not limited to blood and breath samples which may constitute evidence of the offense of Driving Under the Influence of Alcohol in violation of 625 ILCS 5/11-501.*

 *Complainant has probable cause to believe, based upon the following facts that the above items to be seized are located within the above named individual as set forth above.*

 *1. Your Affiant,* **Officer James Finn**, *states he is a police officer employed by* Libertyville Police Department *and has so been employed for 27 Years. Your affiant states he has completed his department's requirements for employment in his field.*

 *2. Your affiant states that he has been trained in the area of detecting when a person has consumed alcohol and in determining if a person is under the influence of alcohol. The affiant's training has included but is not limited to academy training, departmental training, and street experience as a sworn law enforcement officer. The affiant has also received specialized training in the administration of standardized field sobriety tests which include the horizontal gaze nystagmus test (H.G.N.), the walk and turn test, and the one leg stand test. This training also includes what points to look for from the subject taking the tests in order to assist in determining if the person is under the influence of alcohol. The affiant has taken and passed examinations given as part of this training.*

 *3. During the course of the affiant's training and employment, the affiant has been trained how alcohol depresses the central nervous system of a subject, that alcohol has observable effects on the human body, and that consuming alcohol affects a person's ability to operate a motor vehicle. The indicators that show a person may be under the influence of alcohol include but are not limited to red-glassy, bloodshot eyes, slurred speech, a strong odor of alcoholic beverage emanating from a subject's breath, reduced reaction time, impaired judgment, relaxed inhibitions, emotional outbursts, reduced muscle coordination, impaired balance, increased information processing time, and poor risk assessment.*

**EXHIBIT**
**B**

4. *During the course of employment, the affiant has made numerous traffic stops and observed subjects driving whom the affiant suspected to be driving under the influence of alcohol. The affiant is familiar with the methods used in the State of Illinois to obtain samples in order to determine if a person is under the influence of alcohol. Based upon the affiants's experience and training, these methods included the taking of a breath sample or a blood sample. These methods have confirmed the affiant's opinions and observations that those subjects being tested had a blood alcohol concentration above the legal limit.*

5. *In this case, the affiant was on patrol in Lake County, Illinois on August 30, 2008 on 23:30 at vicinity Second Street at Oakspring Road.*

6. *The affiant observed a vehicle with all tail lights out. The vehicle was a 2007 Lexis SUV. The affiant pulled over this vehicle at Second Street and Oakspring Road.*

7. *The affiant made contact with the driver,* Cheryl Yachnin *(Defendant), and asked her for her driver's license and insurance card. She made no response and reached into her purse for her driver's license. She fumbled around in her wallet for her license. Her response was delayed and she made no verbal comments while searching for her license. She appeared to be disoriented and searched into her wallet for some time. The affiant observed that the Defendant was barefoot, her blue jean, cut-off shorts appeared to be damp, and her clothing was disheveled. When the driver spoke, affiant observed her speech to be slurred. The driver also had a strong odor of alcoholic beverage emanating from her breath and watery, blood-shot eyes. Affiant also observed Defendant to have frequent mood-swings. She at first appeared to be disoriented, then she started crying, and then she started arguing with the affiant and other officers of the Libertyville Police Department.*

8. *The affiant had the driver exit the vehicle. Upon exiting the vehicle, the affiant observed the Defendant to sway from side to side and she appeared unsure of her balance. The Defendant refused to tell the affiant where she was coming from beyond "a friend's house," and she never responded to being asked if she had been consuming alcohol.*

9. *The affiant requested that the Defendant perform field sobriety tests. Officer Cardona of the Libertyville Police Department conducted the field sobriety tests on the Defendant while affiant observed and scored the tests as they were conducted. Affiant observed that these tests were performed in accordance with the training the affiant had received. The first test the Defendant performed was the HGN test. The affiant observed the Defendant to fail the HGN at all indicators--lack of smooth pursuit in both eyes, distinct nystgmaus at maximum deviation, and onset of nystagmus prior to 45 degrees. Based upon the affiant's training and experience, these are all points of failure for this test, indicating possible alcohol impairment. The second test performed was the one leg stand test. The defendant was unable to hold her leg up for more than a few seconds before she swayed and lost her balance and put her foot down. Defendant was unable to complete the test. Based upon the affiant's training and experience, the Defendant failed this test, indicating possible alcohol impairment. The next test performed was the walk and turned test. The Defendant was unable to take instruction for this test. She staggered and swayed throughout this test and was unable to turn. Based upon the affiant's training, the Defendant failed this test.*

10. *Based upon the affiant's training and experience, and based upon the observations made of subjects who are under the influence of alcohol in both the affiant's personal and professional life, the ~~affiant's professional opinion is that Cheryl Yachnin, is under the influence of alcohol and is unfit to~~ drive a motor vehicle.*

*11. Based upon the affiant's training and experience, the affiant is aware that blood can be drawn from a person to scientifically test the person's blood alcohol level. The affiant is also aware through training, professional experience, and through personal experience that blood can be drawn from a person through minimally invasive and medically accepted techniques.*

*12. Based upon the affiant's training and experience, the affiant is aware that a person can provide a sample of his or her breath and have it scientifically tested to determine a person's blood alcohol level by using a machine commonly referred to as a "breathalyzer." The affiant is also aware through training, through professional experience, and through personal experience that a breath sample can be taken from a person through minimally invasive techniques.*

*13. During the course of the affiant's employment and training, the affiant has learned that if alcohol is present in the human body, the body is continually in the process of eliminating the alcohol in varying degrees through metabolism, excretion, and evaporation. Based upon for Cheryl Yachnin's refusal to provide a breath sample, evidence of the crime of driving under the influence of alcohol is being eliminated from this person's body.*

*.14. It is the affiant's believe that, based upon all the affiant's observations, that a breath or blood sample will provide evidence of this person's state of intoxication.*

*15. Your affiant states the information contained in this application is for the limited purpose of obtaining judicial authorization for a search warrant. As a result, it is only a summary and may not contain all of the information known to law enforcement regarding this investigation.*

*WHEREFORE, your affiant prays that a Search Warrant may be issued according to law.*

Officer James Finn
**Libertyville Police Dept.**

*STATE OF ILLINOIS* )
                ) SS
*COUNTY OF LAKE* )

*Your affiant,* **Officer James Finn**, *being first duly sworn on oath deposes and say that he has read the above and foregoing complaint for search warrant by him subscribed and that the same is true in substance and in fact to the best of her knowledge.*

Officer James Finn
**Libertyville Police Dept.**

*SUBSCRIBED and SWORN to before me* August 30 , 2008.
*( TIME AND DATE OF ISSUANCE )* 1:25AM

*JUDGE*

STATE OF ILLINOIS     )
                       ) SS

COUNTY OF LAKE     )

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT, LAKE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS     )
                                       )
       -vs-                              ) GENERAL NO. 08 CC
                                       )

CHERYL YACHNIN                          )

## PETITION FOR RULE TO SHOW CAUSE

NOW COMES the People of the State of Illinois, by MICHAEL J. WALLER, State's Attorney, in and for the

County of Lake, State of Illinois, by and through, Jason R. Humke, Assistant State's Attorney, and alleges as follows:

1. That on August 30, 2008, said defendant was ordered to submit a sample of her blood or breath to officer

James Finn of the Libertyville Police Department .

2. That the said defendant has willfully failed to comply with said Order, in that:

She refused to submit either a blood or breath sample as directed.

WHEREFORE, your Petitioner, the People of the State of Illinois, prays that this Honorable Court issue a Rule

to Show Cause, requiring the defendant to show cause, if he can, why he shall not be held in Contempt of Court and

punished for failure to comply with said Order.

Respectfully submitted,

MICHAEL J. WALLER
State's Attorney of Lake County

BY: _____
Jason R. Humke
Assistant State's Attorney

STATE OF ILLINOIS )
                   ) SS
COUNTY OF LAKE    )

Jason R. Humke, being first duly sworn on oath, deposes and says that on information he is familiar with
the facts set forth in said Petition to the best of his knowledge.

_____

**EXHIBIT**

**C**