IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CHERYL YACHNIN, individually and on behalf of other similarly situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 10 C 5419 |
| v. | ) ) | Judge Virginia M. Kendall |
| VILLAGE OF LIBERTYVILLE, VILLAGE OF LIBERTYVILLE POLICE DEPARTMENT, CHIEF OF POLICE PATRICK CAREY, in his individual capacity, OFFICER JAMES FINN, in his individual capacity,  STATE'S ATTORNEY MICHAEL WALLER, in his individual capacity, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Cheryl Yachnin ("Yachnin") filed suit against the Village of Libertyville ("Village"), the Village of Libertyville Police Department ("LPD"), Libertyville Chief of Police Patrick Carey ("Carey"), Libertyville Police Sergeant James Finn ("Finn") (together "Libertyville Defendants"), and Lake County State's Attorney Michael Waller ("Waller") (together with Libertyville Defendants, "Defendants") alleging violations of 42 U.S.C. § 1983, false arrest, and malicious prosecution and seeking both injunctive and declaratory relief.  Specifically, in Count I, which is brought under § 1983, Yachnin alleges that Defendants violated her constitutional rights when they arrested and charged her pursuant to a "No Refusal Weekend."  Yachnin alleges that the procedures associated with the Village's "No Refusal Weekend" represent an unconstitutional policy because they: (1) violate her Sixth Amendment rights to counsel and to confront witnesses; (2) violate her due process rights; (3) violate her Fifth Amendment rights against self-incrimination; (4) violate her right to

privacy; (5) violate her right to equal protection; (6) violate the rights guaranteed to her under Illinois law and the Illinois Vehicle Code; (7) resulted in her false arrest; and (8) resulted in her being falsely charged with criminal contempt. In Count II, Yachnin alleges, pursuant to § 1983, that the Libertyville Defendants falsely arrested her because they lacked probable cause for the initial vehicle stop and for the subsequent detention due to the contempt charge brought against her. In Count III, Yachnin alleges that the Libertyville Defendants maliciously prosecuted her when they pursued criminal contempt proceedings against her.

The Libertyville Defendants and Waller separately move to dismiss. As an initial matter, the Court notes that the LPD is a "non-suable entity" because it is "merely an instrumentality" of the Village and has "no independent legal existence apart from" the Village. *Thiel v. Libertyville Police Dep't*, 1994 WL 673069 at *2 (N.D. Ill. Nov. 28, 1994) (Norgle, J.); *see also Gray v. City of Chi.*, 159 F. Supp. 2d 1086, 1089 (N.D. Ill. 2001) (dismissing claims against Chicago Police Department because it is "not a suable entity" and "does not have a separate legal existence" from the city of Chicago). Because Yachnin has also sued the Village, her claims against the LPD are dismissed with prejudice and the LPD is dismissed from the case. For the following reasons, the Court grants Waller's Motion to Dismiss Count I with prejudice and he is dismissed from the case; the Court grants the Libertyville Defendants' Motion to Dismiss Count I with prejudice; denies the Libertyville Defendants' Motion to Dismiss regarding Count II; and grants the Libertyville Defendants' Motion to Dismiss Count III.

## STATEMENT OF FACTS

The following facts are taken from Yachnin's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The

2

Court, at this stage, may also examine certain documents included in Defendants' Motions to Dismiss that are referred to in Yachnin's Complaint and that are central to her claims. *See Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). The Court therefore considers Waller's Petition for Rule to Show Cause why Yachnin should not be held in contempt, attached as Exhibit C to the Libertyville Defendants' Motion to Dismiss (R. 13), because it is referred to in Yachnin's Complaint and is central to several of her claims.

Yachnin is a resident of Libertyville, Illinois. (Compl. ¶ 2.) On the night of August 29, 2008, Yachnin was driving her car in Libertyville. (Compl. ¶¶ 16, 22.) Yachnin was obeying all traffic laws, did not commit any moving violations, and at all relevant times her car was in good and proper working order. (Compl. ¶¶ 17-24.)

At approximately 11:30 p.m. on August 29th, Finn pulled Yachnin over. (Compl. ¶ 26.) Finn ordered Yachnin to perform a roadside sobriety test, which she performed barefoot on uneven pavement. (Compl. ¶ 28.) Yachnin was then placed under arrest and taken to the LPD. (Compl. ¶¶ 28, 31.) Finn and the other officers that were present then provided Yachnin with a copy of a warning of the consequences that Yachnin faced, pursuant to the Illinois Vehicle Code, if she refused a breathalyzer test. (Compl. ¶ 29.) Finn specifically advised Yachnin that she could refuse to take a breathalyzer test, but that if she refused, her license would be summarily suspended for six months. (Compl. ¶ 30.)

Yachnin refused to take the breathalyzer test at the LPD. (Compl. ¶ 31.) At that point, Finn informed Yachnin that Libertyville had established a "No Refusal Weekend" policy that included the weekend on which Yachnin was arrested, pursuant to which no motorist would be permitted to refuse a breathalyzer test. (Compl. ¶ 32.) To that end, police officers on "No Refusal Weekends"

may seek a search warrant to compel persons refusing to take a breathalyzer test to take one or allow a blood sample to be drawn. (Compl. ¶ 33.)

Yachnin was taken to the Vernon Hills Police Station. (Compl. ¶ 36.) While Yachnin was kept in the rear of a police car, Finn appeared before Judge Charles Johnson to request a search warrant. (Compl. ¶¶ 37-38.) Yachnin was not allowed to participate in the proceedings before Judge Johnson: specifically, she was not able to speak to Judge Johnson; she was not provided with counsel; and she was not permitted to confront or cross-examine any witnesses. (Compl. ¶¶ 40-43.) Judge Johnson signed a search warrant, based on information provided by Finn, that allowed Finn to search Yachnin's person and ordered Finn to take a breath or blood sample from Yachnin. (Compl. ¶ 39.)

Finn told Yachnin that Judge Johnson had issued a search warrant that required her to take a breathalyzer test or provide a blood sample. (Compl. ¶ 44.) Yachnin refused to do either and no breathalyzer was administered or blood sample taken. (Compl. ¶ 45.)

The Libertyville Defendants subsequently sought and received approval from Waller to charge Yachnin with criminal contempt for violating the court-ordered search warrant. (Compl. ¶ 48.) Waller filed a Petition for Rule to Show Cause due to Yachnin's refusal to comply with the search warrant. (R. 13, Exb. C.) Pursuant to the contempt of court charge, Yachnin was required to appear at a bond hearing on August 30, 2008. (Compl. ¶ 48.) She was incarcerated overnight, for thirteen hours, until the bond hearing. (Compl. ¶ 49.) Yachnin posted a $20,000 personal recognizance bond on August 30, 2008, at which point she was released. (Compl. ¶ 51.)

On October 10, 2008, Yachnin filed a Motion to Dismiss the criminal contempt charge. (Compl. ¶ 52.) On October 27, 2008, the Village and Waller attempted to amend the charges against

Yachnin by filing a petition for adjudication of indirect contempt. (Compl. ¶ 53.)

A bench trial was held and Yachnin was found not guilty of the offense of driving under the influence ("DUI") by Judge Patrick Lawler. (Compl. ¶ 55.) Judge Lawler also found that there was no probable cause to pull over Yachnin's car in the first place. (*Id*.) On October 5, 2009, Judge Lawler dismissed the indirect criminal contempt charge against Yachnin, finding that while she was the subject of the court-ordered search warrant, she was not under order of the court. (Compl. ¶ 56.)

Yachnin initiated the current suit on August 26, 2010.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.* A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949.

## DISCUSSION

**I.      Count I**

Defendants move to dismiss Count I of Yachnin's Complaint for failure to state a claim upon which relief may be granted.  Specifically, Defendants allege that Yachnin lacks standing to seek an injunctive remedy and that the "No Refusal Weekend" policy does not violate her constitutional rights or any rights afforded to her under Illinois law.  Moreover, Finn claims that his actions are protected by qualified immunity and the Village claims it cannot be found liable absent a constitutional violation or, alternatively, because Yachnin has failed to properly plead a *Monell* claim.

**A.      Standing**

Defendants first challenge Yachnin's standing to seek injunctive relief.

Article III of the United States Constitution limits the jurisdiction of the federal courts to actual "Cases" and "Controversies."  Unless a case or controversy is presented, no federal court has the jurisdiction to decide whether a federal, state, or local law is constitutional.  *Golden v. Zwickler*, 394 U.S. 103, 110 (1969).  A plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185 (2000); *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983) (plaintiff had standing to seek damages but not to seek injunctive relief against abusive police practices).  "As a general rule, the fact that a person was previously prosecuted for violating a law is insufficient by itself to establish that person's standing to request injunctive relief."  *Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010) (citation omitted).  To establish standing to seek injunctive relief, a plaintiff must show that: (1) she is under threat of an actual and imminent injury in fact; (2) there is a causal relation between that injury and the conduct

to be enjoined; and (3) it is likely, rather than speculative or hypothetical, that a favorable judicial decision will prevent or redress that injury. *See id*.

### i. Likelihood that Injunction will Prevent an Injury

Taking the third element first, the Court finds that any injury Yachnin may face from a future "No Refusal Weekend" is speculative. The Court has not certified the class that Yachnin seeks to represent and, as such, Yachnin may not, at this stage, represent all persons arrested or all persons who may be arrested in the future pursuant to a "No Refusal Weekend." *See Campbell v. Miller*, 373 F.3d 834, 836 (7th Cir. 2004) (where district court has yet to certify a class, plaintiff may not rely on "the prospect that other arrested persons may be subjected" to the same treatment he is now challenging as unconstitutional).

Moreover, while Yachnin is challenging the "policy" of "No Refusal Weekends," she also concedes that the "No Refusal Weekends" occur "from time to time" (Compl. ¶ 34) and are therefore not routine. *See Lyons*, 461 U.S. at 110 (noting that new constraints on when police may use the stranglehold technique at issue weakened the plaintiff's standing claim). Yachnin further concedes that the order compelling her to give a breath or blood sample was issued after Finn first conducted a field sobriety test and then participated in a probable cause hearing before a neutral judge to obtain a search warrant.

Yachnin presents herself as a law-abiding citizen and does not allege that she plans to drive while intoxicated beyond the legal limit in the future. *See Schirmer*, 621 F.3d at 586 ("A plaintiff must show that she has 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder.'") (citations omitted); *Robinson v. City of Chi.*, 868 F.2d 959, 966 (7th Cir.

1989) ("Because the various plaintiffs' future conduct presumably will give the police no probable cause to arrest them, they cannot expect that they will encounter the police or, if they did, that the police would again detain them").[1]  Nor can Yachnin claim that she satisfies the "capable of repetition yet evading review" doctrine because that "applies . . . only when repetition is likely to embroil the same parties to the dispute."  *Robinson*, 868 F.2d at 967 (citations omitted).  As previously stated, the Court has not addressed Yachnin's class certification claims and she has not demonstrated a likelihood that *she* will be arrested for DUI in the future because nothing in the record suggests that she is a repeat offender.  *See Campbell*, 373 F.3d at 836 ("Only if [plaintiff] is apt to be arrested and searched again would prospective relief be apt, and nothing in this record suggests that [plaintiff] is a repeat offender.")  Therefore, Yachnin is unable to demonstrate that it is likely, rather than speculative or hypothetical, that she will be subjected to a compelled breathalyzer or blood sample test in the future.

More importantly, as discussed below, the Court finds that Yachnin did not suffer any constitutional injury from the procedures associated with the Village's "No Refusal Weekend."  Therefore, she does not have standing to seek injunctive relief.

**B.  Sixth Amendment and Due Process Claims**

Yachnin alleges that the hearing to issue a search warrant was a "critical stage" and, as such, she was entitled to her Sixth Amendment rights and due process protections.  Defendants move to dismiss this element of Count I because Yachnin cannot demonstrate constitutional rights to appear

---

[1] The Court construes Yachnin's claim, in her Response to the Motions to Dismiss (R. 30 at p. 18), that she intends to drink and drive on future "No Refusal Weekends," as a claim that she will drink to a point where her blood-alcohol-level is still below the legal limit and, as such, she need not fear being pulled over or arrested for DUI.  As discussed in greater detail below, her claims that the Village will engage in such DUI stops arbitrarily is unfounded as demonstrated by her own arrest, which only occurred after a field sobriety test.

at, to have counsel for, or to cross-examine witnesses at an *ex parte* hearing on the issuance of a search warrant.

### i. Right to Counsel

The Sixth Amendment right to counsel only attaches at the initiation of adversary judicial proceedings. *See Watson v. Hulick*, 481 F.3d 537, 542 (7th Cir.2007). Until the time of a formal charge, indictment, information or arraignment, a suspect does not have a right to counsel under the Sixth Amendment. *See id*. ("[I]nterrogation of a suspect before the filing of a charge, without more, does not trigger the right to counsel."). The Sixth Amendment "becomes applicable only when the government's role shifts from investigation to accusation." *Moran v. Burbine*, 475 U.S. 412, 431 (1986). The Sixth Amendment is applied to the states through the Fourteenth Amendment. *See People v. Stechly*, 870 N.E.2d 333, 346 (Ill. 2007).

Here, while Yachnin was under arrest at the time the search warrant was sought and obtained, she had not been formally charged by an information or indictment at that time. Moreover, the search warrant was part of Finn's investigation into whether or not Yachnin had been operating a vehicle while intoxicated. Yachnin does not cite to any caselaw to support her theory that hearings for the issuance of a search warrant are a "critical stage" (R. 30 at p. 13) that may derogate from an accused's right to a fair trial. *See U.S. v. Wade*, 388 U.S. 218, 226 (1967). Yachnin cannot allege that she had already been charged with contempt at the time of the hearing because she concedes that the contempt charge came after the court issued the search warrant and she refused to comply with its terms.

### ii. Search Warrant

To the extent that Yachnin challenges the general requirement of a search warrant to compel

a breathalyzer test or a blood sample on a "No Refusal Weekend," she is in fact correct. As discussed below, search warrants are not required to obtain breath or blood samples in the DUI context. *See Schmerber v. Cal.*, 384 U.S. 757, 771 (1966) (upholding police officer's "attempt to secure evidence of blood-alcohol content" by obtaining a warrantless blood sample in the DUI context); *People v. Jones*, 824 N.E.2d 239 (Ill. 2005) (allowing for warrantless breath or blood testing in the DUI context because the Illinois Vehicle Code does not grant a DUI arrestee a statutory right to refuse chemical testing). Therefore, the "No Refusal Weekend's" policy requiring search warrants before compelling a breathalyzer or blood sample provides greater protection to drivers than the Constitution or the Illinois Vehicle Code require. Yachnin's due process claims regarding the issuance of a search warrant cannot be maintained.

The Court need not further address the practical hurdles that requiring Sixth Amendment rights—to counsel and to cross-examine witnesses—at a hearing for the issuance of a search warrant would impose. *See U.S. v. Harris*, 403 U.S. 573, 584 (1971) (noting that the Sixth Amendment "seems inapposite to ex parte search warrant proceedings under the Fourth Amendment."). Yachnin's claims that the search warrant issued pursuant to the "No Refusal Weekend" violated her Sixth Amendment rights and her due process rights are dismissed.

### C. Fifth Amendment Right Against Self-Incrimination

Yachnin alleges that the blood sample that the search warrant compelled her to provide would violate her Fifth Amendment right against self-incrimination.

As the Supreme Court made clear in *Schmerber*, the Fifth Amendment "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis

in question in this case did not involve compulsion to these ends." 384 U.S. at 1830-31; *see also U.S. v. Hook*, 471 F.3d 766, 773-74 (7th Cir. 2006) (plaintiff's "claim of unconstitutional self-incrimination . . . fails because the taking of blood samples or fingerprints is not testimonial evidence and as such is not protected by the Fifth Amendment."); *U.S. v. Allen*, 358 Fed. App'x 697 at *2 (7th Cir. 2009) ("Physical evidence like fingerprinting, gunshot residue, and blood samples, is not testimonial and thus does not implicate Fifth Amendment concerns regarding a defendant's right against self-incrimination."). Therefore, even though Yachnin refused to provide a breath or blood sample, and no breath or blood sample was taken, there would have been no violation of her Fifth Amendment rights had a breath or blood sample been taken and used against her. As such, Yachnin's Fifth Amendment claims are dismissed.

### D.    Privacy Rights

Yachnin alleges that the search warrant compelling her to submit to a breathalyzer test or to provide a blood sample violates her constitutional right to privacy.

The Court first notes that Yachnin refused to take a breathalyzer test or provide a blood sample and never had to provide either. Moreover, even if Yachnin did provide a breath or blood sample, as discussed above these would not violate her Fifth Amendment rights to due process or against self-incrimination. *See Schmerber*, 384 U.S. at 759-60. To the extent Yachnin alleges a violation of the Fourth Amendment, her claim fails because both the Supreme Court and Illinois law have clearly established that while the procedures to obtain breath or blood samples are considered searches, they are subject to the "reasonableness" constraints of the Fourth Amendment. *Id*. at 771 (noting that "the record shows that the [blood] test was performed in a reasonable manner"); *see also Ellis v. City of San Diego, Cal.*, 176 F.3d 1183, 1191-92 (9th Cir. 1999) (noting that "blood and

urine tests are searches subject to the constraints of the Fourth Amendment").

In *Schmerber* the Supreme Court reasoned that "once the privilege against self-incrimination has been found not to bar compelled intrusions into the body for blood to be analyzed for alcohol content, the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Id*. at 768. Indeed, the Supreme Court upheld the taking of a warrantless blood sample from a driver suspected of DUI; the blood sample was taken over the driver's objections while he was at a hospital receiving treatment for his injuries. *Id*. at 758. The Supreme Court noted that the "[e]xtraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol," especially given "the risk that such evidence may disappear unless there is an immediate search." *Id*. at 770-71. "Such [blood] tests are a commonplace in these days of periodic physical examination and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain." *Id*. The Supreme Court did, however, caution that medical techniques "even of the most rudimentary sort" be made by medical personnel in a medical environment to avoid risk of "infection and pain."[2] *Id*. at 771-72.

Moreover, Illinois state law allows for breath or blood testing to be compelled with means short of "physical force" in DUI cases regardless of whether death or physical injury has occurred. *Jones*, 824 N.E.2d at 202. In *Jones*, the Illinois Supreme Court reaffirmed that there is no statutory right to refuse breath or blood testing in the DUI context and upheld a warrantless chemical test of

---

[2] The Court emphasizes this last element because it is not clear from the present record where or by whom a blood sample would have been taken.

defendant's blood and urine that was performed over the defendant's objections. *Id*. (holding that the Illinois Vehicle Code "does not grant a statutory right to refuse chemical testing to a DUI arrestee."); *cf. Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 741 (10th Cir. 2007) (finding a violation of the Fourth Amendment when an officer compelled a blood sample against the driver's will because New Mexico law explicitly prohibited warrantless non-consensual blood samples in the DUI context).

Here, the Court notes that Finn first sought and obtained a search warrant from a magistrate judge before attempting to compel Yachnin to provide a breath or blood sample. *See, e.g., Marshall*, 474 F.3d at 741, (noting that *warrantless* compulsory blood tests are unreasonable unless supported by both [1] probable cause and [2] exigent circumstances") (citation omitted) (emphasis added). Further, it bears repeating that Yachnin did not comply and was therefore never compelled to provide a breath or blood sample against her will. Therefore, Yachnin cannot claim that the manner in which her breath or blood were sampled was unreasonable because no sampling ever occurred. *See Schmerber*, 384 U.S. at 772. As such, her claims that the search warrant may have required her to provide a breath or blood sample in violation of her right to privacy are dismissed.

### E. Equal Protection

Yachnin alleges an equal protection "class of one" claim because she was treated differently than other similarly situated drivers arrested for DUI.

Traditionally, the Equal Protection Clause is understood as protecting members of vulnerable groups from unequal treatment attributable to the state. *See Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004). But it also proscribes state action that irrationally singles out and targets an individual for discriminatory treatment as a so-called "class-of-one." *Reget v. City of La Crosse*, 595

F.3d 691, 695 (7th Cir.2010). To allege a "class of one" claim, a plaintiff must show that: (1) she was intentionally treated differently from others similarly situated; and (2) there was no rational basis for that differential treatment, or that the differential treatment was the result of an illegitimate animus towards the plaintiff by the defendants. *See Schor v. City of Chi.*, 576 F.3d 775, 779 (7th Cir. 2009).

### i. Similarly Situated

"To be considered 'similarly situated,' a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010). The "similarly situated" analysis is not a "precise formula," but "similarly situated individuals must be very similar indeed." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir.2004).

Here, the parties dispute who the comparators are. Yachnin compares herself, a driver arrested for DUI on a "No Refusal Weekend," to drivers arrested for DUI on any other non-"No Refusal Weekend"-day. Yachnin argues that drivers on any other day will only be detained for a short time and will be given the option of refusing to provide a breath or blood sample, while she was subject to incarceration for contempt and held many hours longer than a typical DUI arrestee. Defendants compare Yachnin to other drivers on a "No Refusal Weekend" who were not suspected of or arrested for DUI. Defendants argue that by virtue of the fact that the other drivers where law-abiding, while those such as Yachnin who were pulled over and arrested for DUI were not, the two groups cannot be similarly situated.

If the Court were to adopt Defendants' classification, Yachnin would be unable to demonstrate that she was similarly situated to other drivers on the days of a "No Refusal Weekend"

who were not arrested for DUI because those other drivers were presumably not violating the law or had satisfactorily completed a field sobriety test. In *Schor*, the Seventh Circuit found that plaintiff-drivers violating a Chicago ordinance by driving while using their cell phones could not claim to be similarly situated to drivers who were not violating an ordinance. 576 F.3d at 779 (finding a "rational distinction" between plaintiffs violating a city ordinance and others who were not). Similarly, Yachnin cannot claim that she is similarly situated to all drivers who drove in the Village on the weekend of August 29, 2008, particularly those who were not violating any ordinance. *See Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 946 (7th Cir. 2009) (noting that "evidence of similarity requires specificity" and rejecting plaintiff's attempt to use "all other residents" of a town as comparators).

If the Court were to adopt Yachnin's classification, it arguably could find that she was similarly situated to drivers suspected of DUI on other days of the week. As an initial matter, though, Yachnin, like drivers pulled over for DUI on days outside of the "No Refusal Weekend" who chose not to take a breathalyzer test, did not end up providing a breath or blood sample after her arrest. Therefore, Yachnin's only claim for being treated differently stems from the pursuit of and prosecution for contempt charges—charges which a driver suspected of DUI on a day outside of the "No Refusal Weekends" would presumably not incur for refusing to take a breathalyzer test. Defendants, however, had a rational basis for bringing the contempt charges and, as such, Yachnin cannot prevail on her equal protection claim.

### ii.    Rational Basis

A state or municipal statute survives rational basis scrutiny "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *City of Chi. v.*

*Shalala*, 189 F.3d 598, 605 (7th Cir.1999) (internal quotation marks omitted).  This is an onerous test to overcome, as "the burden is upon the challenging party to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Smith v. City of Chi.*, 457 F.3d 643, 652 (7th Cir. 2006) (internal quotation marks omitted).  "It is the plaintiff's burden to prove the government's action irrational."  *Id*.  "A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality."  *Shalala*, 189 F.3d at 606 (internal quotation marks omitted).  Any rational basis will suffice, even one that was not articulated at the time the disparate treatment occurred.  *Smith*, 457 F.3d at 652.

Here, the hearing to issue a search warrant required a neutral judge to find probable cause to further investigate Yachnin's blood-alcohol-level.  This finding of probable cause satisfies the rational basis requirement for Defendants' actions relating to the search warrant.  *See Avila v. Pappas*, 591 F.3d 552, 554 (7th Cir. 2010) ("Probable cause is a rational basis for official action."). It is also undisputed that Yachnin did not comply with the court-ordered search warrant and refused to provide a breath or blood sample.  As such, Waller had a rational basis to issue a Petition for Rule to Show Cause why Yachnin should not be held in contempt for violating a court order.  To the extent that Yachnin challenges the charge of direct criminal contempt because that charge was later amended by Waller, "[c]hoosing the wrong state statute on which to base a prosecution—when there is a rational basis for *some* prosecution—does not violate the equal protection clause or any other part of the federal Constitution."  *Id*. at 555 (emphasis in original).  Waller's amending of the contempt charge against Yachnin does not negate his rational basis to bring a charge in the first place for her non-compliance with a court order.  Thus, Yachnin's allegations fall short of an equal

protection claim.

Moreover, Yachnin does not allege that she passed the field sobriety test that Finn administered after pulling her over. As such, Defendants did not "pick [Yachnin's] name out of a hat"; she was prosecuted for suspicion of DUI and has not denied that she failed the field sobriety test. *Id.* at 554 (finding defendants had a rational basis for prosecuting plaintiff because plaintiff never denied making the statement that she was prosecuted for). Finally, there are no allegations of or evidence of an illegitimate animus towards Yachnin.

The Court finds that even if Yachnin is able to demonstrate that she was treated differently than other similarly situated drivers, Defendants had a rational basis for seeking contempt charges against her for her refusal to comply with a court-ordered search warrant. The Court need not address at this time whether Defendants had a rational basis for instituting the "No Refusal Weekend" program to find that Yachnin's equal protection "class of one" claim fails and must be dismissed.

F.      **Illinois Law and the Illinois Vehicle Code**

Yachnin alleges that the "No Refusal Weekends" violate the rights afforded to her by the Illinois Vehicle Code, 625 ILCS 5/11-501.2, and other applicable Illinois law. Given the Illinois Supreme Court's explicit holding in *Jones* that the Vehicle Code "does not grant a statutory right to refuse chemical testing to a DUI arrestee," the Court finds that Yachnin's Illinois Vehicle Code claim must be dismissed. *Jones*, 824 N.E.2d at 202. To the extent that Yachnin alleges that Finn and other officers violated *Jones* by acting with "unbridled authority" in arresting her, this claim is not supported by the allegations in her Complaint.

In *Jones*, the Illinois Supreme Court expressly allowed for breath or blood samples to be

drawn, without a search warrant, in the DUI context even if there was no death or injury involved. *See id*. The court limited its holding, however, by stating that police officers should not read *Jones* as a grant of "unbridled authority to order and conduct chemical tests." *Id*. at 201. Therefore, the Court must consider whether the Defendants' actions in attempting to obtain a breath or blood sample involved the exercise of unbridled authority over Yachnin.

Yachnin concedes that "No Refusal Weekends" are limited in duration and frequency. She also concedes that after she was pulled over, Finn conducted a field sobriety test—a test that Yachnin does not allege that she passed. Only after conducting the field sobriety test did Finn request that Yachnin submit to a breathalyzer test. After she refused to take a breathalyzer test, Finn appeared before a neutral judge to obtain a search warrant compelling Yachnin to provide a breath or blood sample. After hearing the evidence, the judge determined that probable cause existed to issue a search warrant compelling Yachnin to provide a breath or blood sample. It was only after Yachnin refused to comply with the court-ordered search warrant that Waller filed a Petition for Rule to Show Cause why she should not be held in contempt for violating a court order. No breath or blood sample was ever taken.

The procedures described above clearly indicate that Finn was not acting with "unbridled authority" in seeking to compel Yachnin to provide a breath or blood sample to determine her blood-alcohol-level. While Yachnin challenges whether Finn had probable cause to pull her over, she does not contest that once he had pulled her over, Finn had a reasonable suspicion that she was under the influence of alcohol. Nor does Yachnin allege that the field sobriety test constituted "unbridled authority." Indeed, Illinois courts have upheld the administration of field sobriety tests based on a "faint odor of alcohol coming from the passenger compartment" and the driver's admission that "he

had one beer." *People v. Bruni*, 940 N.E.2d 84, 87-88 (Ill. App. Ct. 2010) (collecting cases). In addition, Finn's decision to seek a search warrant from a neutral judge to compel a breath or blood sample further limited his ability to exercise "unbridled authority."

The Court finds that Finn's compliance with the safeguards provided for in the "No Refusal Weekend" procedures satisfy the requirement in *Jones* that officers not be allowed to act with "unbridled authority." As such, Yachnin's claim that the "No Refusal Weekend" procedures violate Illinois law and the Illinois Vehicle Code must be dismissed.

### G.     Qualified Immunity

Finn alternatively moves to dismiss the claims against him regarding his actions seeking to compel Yachnin to provide a breath or blood sample as well as his actions relating to the contempt charge filed against her.

Qualified immunity protects officers performing discretionary functions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would know about. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). A plaintiff seeking to defeat this defense in a § 1983 action must show that: (1) the plaintiff's rights were violated; (2) the law concerning the plaintiff's asserted right was clearly established at the time the challenged conduct occurred. *Id.* In addition, the Court must determine whether a reasonably competent official would know that the conduct was unlawful in the situation he confronted. *Id.*

Here, Finn argues that the law relating to compelled breath or blood testing for evidence in a DUI case remains unclear. Specifically, Finn cites to *Jones* and its caution that while the Illinois Vehicle Code does not provide DUI arrestees with a right to refuse to submit to chemical testing, the court "does not suggest" that law enforcement officers "use physical force in obtaining blood, urine,

and breath samples." *Jones*, 824 N.E.2d at 247. Finn claims that given these apparently conflicting instructions, the laws regarding Yachnin's rights could not have been clearly established. Finn also claims he is entitled to qualified immunity regarding the contempt charge because he was relying on a court-ordered search warrant and the advice of Waller, the State's Attorney.

As previously discussed, Yachnin cannot demonstrate that her rights were violated by the issuance of the search warrant or by the Petition for Rule to Show Cause why Yachnin should not be held in contempt. In addition, *Jones* explicitly held that Illinois drivers have no right to refuse chemical testing in the DUI context and, as such, Yachnin cannot claim that the opposite—her right to refuse to provide a breath or blood sample—was a clearly established right. *See id.*; *cf. Marshall*, 474 F.3d at 741 (where New Mexico explicitly prohibited compelling a driver to provide a warrantless, nonconsensual breath or blood sample, officer's conduct compelling a sample was improper).

Moreover, the Illinois Supreme Court's caution in *Jones* against using "physical force" severely restricts the manner in which a breath or blood sample can be obtained, as evidenced by the facts of this case. Lacking clear direction on the appropriate methods to compel breath or blood samples without the use of physical force, a reasonably competent officer would not know that Finn's conduct—seeking a search warrant from a neutral judge and then a Petition for Rule to Show Cause—was unlawful. *See Wollin v. Gondert*, 192 F.3d 616, 624 (7th Cir. 1999) ("a deputy sheriff executing a directive issued by a trained and licensed practitioner of the law and duly appointed officer of the court . . . cannot be required to second guess the [practitioner's] order unless he clearly knows the order is outside the range of the [practitioner's] professional competence."). Here, Finn relied on Waller, a State's Attorney, on a matter—the issuance of a Petition for a Rule to Show

Cause—that Finn could reasonably assume was within the range of Waller's professional competence.

Because it was clearly established that Illinois drivers had no right to refuse chemical testing in the DUI context, but the procedures to compel breath or blood samples were not clearly established, the Court finds that Finn is entitled to qualified immunity regarding his actions seeking to compel a breath or blood sample from Yachnin. Finn is also entitled to qualified immunity regarding his actions relating to the contempt charge filed against Yachnin, because he reasonably relied on Waller's professional competence. Finn's qualified immunity, however, does not extend to Yachnin's incarceration because it is not clear from the Complaint that she was incarcerated at Waller's direction. As such, Finn cannot claim that he relied on Waller's professional competence for that purpose.

H. *Monell* Claim

Yachnin alleges that "No Refusal Weekends" are the express and official policy of the Village and that the municipality is therefore liable under *Monell*.

The Village cannot be held liable for § 1983 violations under the doctrine of respondeat superior "for an injury inflicted solely by its employees or agents." *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). A plaintiff in a § 1983 case, however, can sue the individual government actors that allegedly caused the constitutional violation as well as the municipality connected to the violation. *See Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 302-05 (7th Cir. 2010). A municipality may be liable for damages under § 1983 if the unconstitutional act is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well

settled; or (3) an official with final policy-making authority. *Id*. at 303. A finding of liability against the individual defendants is not a prerequisite for establishing *Monell* liability against the municipality. *See id*. at 305.

*Monell* claims require an unconstitutional act and, as discussed above, the procedures associated with the Village's "No Refusal Weekend" did not violate Yachnin's constitutional rights. As such, her *Monell* claim must be dismissed. Because the Court finds the Village's policies and procedures regarding "No Refusal Weekends" are constitutional, it also dismisses the individual claims against Carey to the extent he is alleged to be a final policy-maker.

## I.      False Arrest

Yachnin alleges that she was falsely arrested for DUI without any factual or legal basis. (Compl. ¶ 61(g).) The Court construes this as a claim that Finn lacked probable cause to make the initial stop of her vehicle. Because there are no allegations in the Complaint that Waller was involved in the initial stop of Yachnin's vehicle, and because this claim is reasserted in Count II against the Libertyville Defendants (and not Waller), the Court will address this claim as part of its analysis of Count II.

## J.      Criminal Contempt

Yachnin alleges that Defendants violated § 1983 by charging her with criminal contempt when they knew she had not been ordered by the court to do anything.[3] (Compl. ¶ 61(k).)

Yachnin, however, concedes in her Complaint that the search warrant issued by the magistrate judge was one "compelling her to give blood or breath." (Compl. ¶ 61(e).) This court

---

[3] The Court has already held that Finn is entitled to qualified immunity regarding the filing of the contempt charge.

order does not violate her constitutional rights, *Schmerber*, 384 U.S. at 757, and is consistent with Illinois law and the Illinois Vehicle Code. *See Jones*, 824 N.E.2d at 239. Yachnin also admits that after being informed of the search warrant, she "declined to take a breathalyzer test or provide a blood sample." (Compl. ¶ 45.) Criminal contempt "consists of punishing for doing what has been prohibited or not doing what has been ordered." *People v. Covington*, 917 N.E.2d 618, 627 (Ill. App. Ct. 2009). As such, and as discussed in greater detail below, the Defendants did not violate § 1983 by bringing a contempt charge against Yachnin for her non-compliance with a court order.

The Court grants Defendants' Motions to Dismiss Count I.

## II.     Count II

Yachnin alleges that she was falsely arrested in violation of § 1983 because the Libertyville Defendants: (1) lacked probable cause to pull her over; and (2) lacked probable cause to detain her for the contempt charge.

Police officers have probable cause to arrest if the facts and circumstances within the officer's knowledge at the time of the arrest are sufficient to cause a reasonable person to believe that the suspect has committed, is committing, or is about to commit an offense. *See Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008). The existence of probable cause bars the plaintiff's recovery on a false arrest claim under § 1983. *See id.* at 685. Although probable cause requires more than a bare suspicion of criminal activity, it does not require evidence sufficient to support a conviction. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007).

### A.     Initial Stop

Here, Yachnin alleges that she was driving safely and obeying all traffic laws when she was pulled over by Finn. Yachnin further alleges that her car was functioning properly at the time.

Taking these claims as true, there was no reason for Finn to pull Yachnin over.[4]  As such, the Court denies the Libertyville Defendants' Motion to Dismiss Count II with respect to the initial stop of Yachnin's vehicle.

**B.      Contempt Charge**

A person arrested without a warrant may be held prior to a judicial determination of probable cause for a "brief period" to carry out "the administrative steps incident to arrest." *Chortek v. City of Milwaukee*, 356 F.3d 740, 746 (7th Cir. 2004) (citation omitted).

Yachnin alleges that the Libertyville Defendants lacked probable cause to detain her for the contempt charge.  As discussed above, Finn has qualified immunity only with respect to the filing of the Petition for Rule to Show Cause, but not with respect to Yachnin's subsequent thirteen-hour incarceration.  While the Court finds that the Libertyville Defendants had probable cause to charge Yachnin with criminal contempt, the circumstances giving rise to her thirteen-hour detention are less clear.  In short, it is not obvious from the Complaint who directed that Yachnin be held until the next day's bond hearing and whether that individual had probable cause to do so.  As such, Yachnin's claim of false arrest regarding her thirteen hours in custody also remains against the Libertyville Defendants.

The Court denies the Libertyville Defendants' Motion to Dismiss Count II.

**III.     Malicious Prosecution**

Yachnin alleges that the Libertyville Defendants maliciously prosecuted her in violation of Illinois law when they brought criminal contempt proceedings against her.

---

[4] The Court cannot at this time credit Finn's contention that he pulled Yachnin over because her car's taillights were not functioning properly.

Illinois does not favor malicious prosecution suits, "due to the public policy interest in the exposure of crime." *Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 319 (Ill. App. Ct. 2006). To establish a claim for malicious prosecution under Illinois law, a plaintiff must show: (1) the commencement of a criminal or civil proceeding against the plaintiff by defendants; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the criminal proceeding; (4) presence of malice on defendants' part; and (5) damages resulting to plaintiff. *Boyd v. City of Chi.*, 880 N.E.2d 1033, 1045 (Ill. App. Ct. 2007). "The absence of any one of these elements bars a plaintiff from pursuing the claim." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996) (citation omitted).

Here, Yachnin alleges in her Complaint that a proceeding was brought against her regarding her contempt charge, that the proceeding was terminated in her favor in a manner indicative of her innocence on October 5, 2009, that the Libertyville Defendants acted with malice, and that she suffered personal and financial damages due to her imprisonment and subsequent legal fees. Yachnin, however, cannot demonstrate the absence of probable cause in bringing the contempt charge against her. First, the Petition for Rule to Show Cause was brought by Waller, who is not named in this Count. Second, the contempt order was brought for the violation of a court-ordered search warrant, and the search warrant was only issued after a neutral judge found probable cause to do so. *See, e.g., Wright v. Bogs Mgmt., Inc.*, 1999 WL 688775 at *10 (N.D. Ill. Mar. 31, 1999) (Williams, J.) (dismissing plaintiff's claim that defendant's maliciously prosecuted a contempt charge because "[p]robable cause did exist for the contempt of court charge" when plaintiff disobeyed the order).

Yachnin claims that the court order did not compel her to do anything and that it instead

compelled Finn to take action. While the court-ordered search warrant was directed at Finn, Yachnin nonetheless concedes in her Complaint that the judge issued an order "compelling her to give blood or breath." (Compl. ¶ 61(e).) Moreover, Yachnin then refused to allow Finn to take a breath or blood sample, alleging that "[a]fter having been advised of the search warrant, [Yachnin] declined to take a breathalyzer test or provide a blood sample." (Compl. ¶ 45.)

As discussed above, Yachnin's insistence that the Illinois Vehicle Code prevents law enforcement officers from compelling breath or blood samples is inconsistent with the Illinois Supreme Court's 2005 interpretation of the Vehicle Code in *Jones*. *See* 824 N.E.2d at 202. Even if the Court were to credit Yachnin's incorrect belief regarding the rights afforded by the Illinois Vehicle Code, she still concedes that she was informed by Finn of the search warrant's requirements and then refused to comply with its terms. *See Matter of Establishment Inspection of Microcosm*, 951 F.2d 121, 125 (7th Cir. 1991) (noting that defendant "fails to cite to any pertinent authority for the proposition that his subjective belief that the warrant was invalid justified him in noncompliance."). The Court therefore finds that, to the extent that they were involved in the decision to pursue contempt charges against Yachnin, the Libertyville Defendants had probable cause to pursue these charges due to Yachnin's failure to comply with a court-ordered search warrant. *See, e.g., Wright*, 1999 WL 688775 at *10. As such, the Court grants the Libertyville Defendants' Motion to Dismiss Count III.

## CONCLUSION AND ORDER

The Court grants Waller's Motion to Dismiss Count I with prejudice; grants the Libertyville Defendants' Motion to Dismiss Count I with prejudice; denies the Libertyville Defendants' Motion to Dismiss Count II; and grants the Libertyville Defendants' Motion to Dismiss Count III. The Village of Libertyville Police Department and Lake County State's Attorney Michael Waller are dismissed from the case.

So ordered.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 10, 2011